STATE OF MISSOURI, Respondent, v. EVELYN HARTMAN, Appellant, No. 44051—273 S. W. (2d) 198.

Court en Banc, November 8, 1954.

*Morris A. Shenker, Sidney M. Glazer* and *Mark M. Hennelly* for appellant.

*John M. Dalton,* Attorney General, and *Donal D. Guffey,* Assistant Attorney General, for respondent.

BOHLING, C.—Evelyn Hartman appeals from a judgment imposing a sentence of imprisonment for three years for feloniously obtaining property by means of a false and bogus check. § 561.450, RSMo 1949. (Statutory references are to RSMo 1949 unless otherwise indicated.) She questions the validity of the information, the sufficiency of the evidence and the admissibility of certain testimony, the main instruction, the verdict and the sustaining of an objection to her counsel's argument. .

Max Zimmer, a baker by trade, was the sole owner of the Taylor Pastry Shop in St. Louis, Missouri. Mr. Zimmer testified that he had seen defendant in his place of business several times, three or four, and thought she lived in the neighborhood. About 10:00 a.m., March 15, 1951, defendant came in and ordered merchandise from a clerk in the amount of about $4.00. His clerk came to him in the rear of the establishment with a check. He went to the front of the store and talked to defendant, and cashed the check, giving defendant the merchandise and $31 and some cents in cash. The three were the only ones in his place of business. We set forth the check (exhibit No. 1):

"ST. LOUIS SHOE MFG. CO. 889 299 March 1 1951
 FIRST NATIONAL BANK of ST. LOUIS, MO.
 Pay to NORA REDMAN or order $ 35.92
 THIRTY FIVE DOLLARS NINETY TWO CENTS Dollars
For Value Received, I represent the above amount is on deposit in said bank or trust company, in my name, is free from claims and is subject to this check.
(Gibsons 1204) PAY CHECK SIGN HERE Wm. Buacere,
 ADDRESS ——————————"

The check has the endorsements: "Nora Redman, 4619 Delmar Bl." and "Max Zimmer, 518 N. Taylor." Mr. Zimmer deposited the check but it was returned to him and he never received credit for it.

The State also introduced the following evidence. On March 14, 1951, defendant obtained from Clarence Spaeth merchandise and cash on a like check (exhibit No. 2), signed "Wm. Rederd," in the amount of $35.92. Upon Mr. Spaeth hesitating to accept the check, defendant said: "Why not? The check is made out by the St. Louis Shoe Manu-

1114

facturing Company and you know where they are.'' Defendant, on May 11, 1951, also obtained from Mrs. Pauline Logaglio merchandise and cash, upon asking Mrs. Logaglio to cash "her payroll check," (exhibit No. 3) in the amount of $35.93. Mr. Spaeth and Mrs. Logaglio deposited their respective checks but neither received credit therefor.

Earl B. Barnard, an employee of the First National Bank, testified that at one time he, as an employee of the bank, had possession of exhibits 1, 2 and 3, and that the bank refused to pay the checks because it had no account to charge them against.

Harold Tober testified that he was secretary for the St. Louis Shoe Manufacturing Company and had charge of its books and records; that exhibits 1, 2 and 3 were not checks of that company; that they did not have an employee by the name of Nora Redman or any employee named Buacere or Rederd; and that only his brother and he were authorized to sign checks for the St. Louis Shoe Manufacturing Company.

Defendant contends the information is bad for duplicity in that it commingled in one count charges under the different statutes hereinafter mentioned, and her motion to dismiss ' (Sup. Ct. R. 25.05) should have been sustained.

The information in one count charged in substance that Evelyn Hartman, on March 15, 1951, at St. Louis, feloniously et cetera, with intent to cheat and defraud Max Zimmer, did falsely pretend and represent to the said Max Zimmer that she was one Nora Redman, which name appeared as payee of a certain false and bogus check purporting to be a payroll check of the St. Louis Shoe Manufacturing Company, setting forth a copy of the check; and that Evelyn Hartman, further falsely pretended and represented that the said false and bogus check was a genuine payroll check of the St. Louis Shoe Manufacturing Company, and that Max Zimmer, relying upon and believing said false representations and pretenses, and being deceived thereby, was induced to and did pay and deliver to Evelyn Hartman $31.33 in cash and merchandise of the value of $4.59, coupled with allegations negativing the truth of said representations· and pretenses and the genuineness of said check.

The only allegations referred to in defendant's brief—(no allegations are distinctly specified in defendant's motion to dismiss (§ 545.220, Sup. Ct. R. 25.06) or defendant's motion for new trial (§ 547.030))—are that defendant on March 15, 1951, with felonious intent to cheat and defraud Max Zimmer, (1) did falsely pretend and represent that she was Nora Redman, whose name appeared as payee of a certain false and bogus check purporting to be a payroll check of the St. Louis Shoe Manufacturing Company, and (2) did further pretend and represent that the false and bogus check was a genuine payroll check of said St. Louis Shoe Manufacturing Company; and that, relying upon the false representations and believing them to be

true, Max Zimmer was induced to pay over to defendant the money and merchandise.

Some elements of the offenses defined in § 561.450 are, as defendant states, also common to independent offenses under other statutory enactments. We think, taking the information as a whole, it does not charge defendant with the offense of uttering a forged or counterfeit check, knowing the same to be forged or counterfeited, with intent to have the same passed (§ 561.090); or with the misdemeanor of making, drawing, uttering or delivering, with intent to defraud, a check upon a bank, knowing that the maker or drawer did not have sufficient funds to his credit for its payment in full (§ 561.460).

The principal contention in defendant's brief is that the information charges offenses under §§ 561.370 and 561.450. The pertinent portions of said sections read:

§ 561.370: "Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing or by any other false pretense, * * obtain from any person any money, personal property, * * or effects whatsoever * * shall upon conviction" be punished as for feloniously stealing such property.

§ 561.450: "Every person who, with the intent to cheat and defraud, shall obtain or attempt to obtain, from any other person, or persons, any money, property or valuable thing whatever by means or by use of any trick or deception, or false and fraudulent ▉ representation, or statement or pretense, or by any other means or instrument or device, commonly called 'the confidence game,' or by means or by use, of any false or bogus check" shall be deemed guilty of a felony and upon conviction punished by imprisonment for two to seven years.

Defendant stresses observations in State v. Griggs, 361 Mo. 758, 236 S. W. 2d 588, which support her position. Griggs was prosecuted for giving a check "with intent to cheat and defraud, on a bank in which the drawer of the check knows he has no funds," the provision of § 561.450 immediately following the last quoted provision supra of said section. Griggs merely gave the check and did not make any verbal representations at the time. (236 S. W. 2d l.c. 590[2].) However, the information additionally charged that he "did then and there * * feloniously represent and pretend that he had an account in said bank, and, that said check would be paid" et cetera. (Id., l.c. 589, 590.) The court stated (Id., l.c. 592[5]) the information was duplicitous for commingling allegations in a single count charging a crime under § 561.370 and § 561.450. The court held the State's main instruction in the Grigg's case was prejudicially erroneous because it failed to require a finding "that defendant *knew he had no funds* in the bank on which the check was drawn." (Id., l.c. 592[6, 7].) For reasons presently to be developed the observations in State v. Griggs with respect to the information should not be followed so far as they conflict herewith.

1116

Section 561.370, so far as involved, first appeared in 1 Terr. Laws, p. 216, § 29; R. S. 1825, p. 290, § 38; and § 561.450 in Laws 1879, p. 88. They define cognate offenses, and this was recognized by the General Assembly. The title to the act of 1879 read: "An act to punish cheats, frauds, tricks, deceptions, false and fraudulent representations, statements, false pretenses, confidence games, and using and passing false and bogus checks, instruments, coins and metals." The act carried an emergency clause and § 2 thereof set forth a form of indictment under § 1, which the General Assembly stated was to be "held a sufficient description of the offense," and which purported to embrace all of the several prohibited acts set forth in § 1. The early cases considered an indictment conforming to § 2 of the act sufficient (State v. Fancher, 71 Mo. 460, 463(2)); but later cases held § 2 unconstitutional and indictments merely conforming thereto invalid (State v. Cameron, 117 Mo. 371, 376, 22 S. W. 1024, 1025; State v. Fleming, 117 Mo. 377, 378, 22 S. W. 1024).

It is apparent from the title and also from the wording of § 1 of the act (Laws 1879, supra, now § 561.450) that the General Assembly defined a "felony" which might be committed by the doing of any of the several prohibited acts therein set forth. So far as here material it may be committed "by means or by use of any * * false and fraudulent representation, or statement, or pretense, * * or by means, or by use, of any false or bogus check * *." The issue falls within the rule of criminal procedure that an information charging in one count the commission of more than one of several nonrepugnant acts prohibited by a given statute is not bad for duplicity. "To repeat what was explained in another connection, if a statute makes criminal the doing of this, or that, or that, mentioning several things disjunctively, there is but one offense, which may be committed in different ways; and in most instances all may be charged in a single count. But the conjunctive 'and' must ordinarily in the indictment take the place of 'or' in the statute, else it will be ill as being uncertain. And proof of the offense in any one of the ways will sustain the allegation. On the other hand, the indictment may equally well charge what comes within a single one or more clauses, less than all, of the statute, and still it embraces the complete proportions of the forbidden wrong." 2 Bishop's New Cr. Proc., 2d Ed., 463, § 586. See State v. Flynn, 258 Mo. 211, 219(I), 167 S. W. 516, 518[1-6], reviewing authorities; State v. Lundry, 361 Mo. 156, 233 S. W. 2d 734, 736[5, 6]; State v. Shelby, 333 Mo. 1036, 64 S. W. 2d 269, 271[6-8]; State v. Spano, 320 Mo. 280, 6 S. W. 2d 849, 850[1, 2]; State v. Craft, 299 Mo. 332, 253 S. W. 224, 227[5]; State v. Williams, Mo., 183 S. W. 308, 309[2]; State v. Murphy, 47 Mo. 274, 275(2); Miller v. Gerk, Mo. App., 27 S. W. 2d 444, 445[4]; 42 C. J. S. 1120, §§ 166, 251; 27 Am. Jur. 683, §§ 124, 125; 1 Wharton, Cr. Proc., 10th Ed., § 300; 2 Wharton, Cr. Law, 12th Ed., § 1487.

In State v. Steele, 226 Mo. 583, 592, 126 S. W. 406, 409, a voluminous information, containing unnecessary allegations, was held to charge an offense of obtaining property under false representations and pretenses, the court observing it contained "every essential allegation necessary to charge an offense either under" now § 561.370 or under now § 561.450. See also State v. Clice, Mo., 252 S. W. 465, 466(1), and State v. Whitledge, Jr., 269 S. W. 2d 748.

The information may be prolix. Compare the information in State v. Polakoff, 361 Mo. 929, 237 S. W. 2d 173, 174[1-3], and the portion of the charge considered sufficient in State v. Griggs, 361 Mo. 758, 236 S. W. 2d 588, 589, under § 561.450. The information need contain only sufficient allegations to charge one of the statutory prohibited acts. State v. Scott, Mo., 230 S. W. 2d 764, 766[2]. The gist of the instant charge was obtaining the property of another by means of a false or bogus check with intent to cheat and defraud, distinguishing the offense from that defined in § 561.370. All allegations therein related to the same transaction, the one check, successive steps in the consummation of one offense, and no inconsistency or repugnancy existed in the allegations. The unnecessary allegations informed defendant with greater particularity than necessary of the offense with which she was charged, did not harm defendant, and may be treated as surplusage. Upon a termination of the instant proceeding, defendant may not again be placed in jeopardy therefor.

Section 545.220 provides: "A demurrer to or motion to quash an indictment shall distinctly specify the grounds of objection to the indictment; unless it does so, it shall be disregarded, nor shall any reason be held to sustain such demurrer or motion not specified therein." Supreme Court Rule 25.06(e) is to like effect. The court in State v. Spence, 87 Mo. App. 577, 579 (III), stated: "It is finally contended that the court erred in not quashing the indictment for duplicity. There is no merit whatever in this assignment; first because the motion is wholly vague in its terms and fails to point out wherein more than one offense was charged in the indictment. State v. Marshall, 47 Mo. 378, 380." Defendant's motion for new trial is no more explicit on this issue than his motion to dismiss. See § 547.030. It follows that error may not be successfully predicated upon the trial court's overruling of defendant's motion to dismiss because it is not pointed out wherein more than one offense was charged in the information. Surplusage or repugnant allegations in an information sufficiently charging an offense are disregarded after a verdict responsive to the charge when not properly attacked in the trial court. State v. Adams, 318 Mo. 712, 300 S. W. 738, 741[3-5]. In State v. Spidle, 342 Mo. 571, 116 S. W. 2d 96, 98[1, 2], defendant was charged in one count with killing a hog with intent to steal and convert the carcass (§ 560.205) and with feloniously stealing the carcass (§ 560.155). The information was held good after verdict, treating the larceny charge as surplusage.

■ Defendant's contention that error was committed in the admission of testimony of like transactions between defendant and witnesses Spaeth and Logaglio is without merit. It was admissible on the issue of defendant's criminal intent. State v. Hotsenpiller, 359 Mo. 1031, 224 S. W. 2d 1014, 1017[3, 4] and authorities cited; State v. Jackson, 112 Mo. 585, 588(II), 20 S. W. 674, 675(2); State v. Neal, 350 Mo. 1002, 169 S. W. 2d 686, 695[13]; 35 C. J. S. 711, § 51, c; 22 Am. Jur. 506, § 109. The transaction [205] with Mrs. Logaglio on May 11, 1951, was not too remote. See State v. Jackson, supra; State v. Neal, supra; State v. Foley, 247 Mo. 607, 635(IV(1)), 153 S. W. 1010, 1018[9]; Annotation, 80 A. L. R. 1319(IV, c, 2).

■ Defendant contends the State failed to make a submissible case, stating the only representation was the check itself. It is stated in 22 Am. Jur. 474, § 57, that the majority view, upon the necessity of making a false representation extrinsic to a check which is in fact worthless, that the check is good or will be paid, to sustain a conviction for obtaining property by means of such a check, that such representations are unnecessary. It was so considered in State v. Griggs, 361 Mo. 758, 236 S. W. 2d 588, 590[2], a prosecution under § 561.450. Defendant received the money and goods because of the delivery of the check to Zimmer.

■ Defendant also says it must be shown to constitute a false or bogus check that the check is "one drawn on a non-existent bank, or by or payable to a fictitious person," quoting State v. Bird, Mo., 242 S. W. 2d 576, 577. State v. Robinson, Mo., 255 S. W. 2d 811, 814. We do not understand that the court in the quoted remarks was necessarily stating an all inclusive definition of a "false or bogus" check within § 561.450. The statute prohibits committing the defined offense by means or by use of "any *false or bogus* check." See definitions of "false," 35 C. J. S. 495; State v. Arnett, 338 Mo. 907, 92 S. W. 2d 897, 900; Williams v. Arizona, 13 Ariz. 27, 108 P. 243, 27 L. R. A. (NS) 1032, 1033, a leading case. We think it obvious that the title and the provisions (quoted supra) of the act (Laws 1879, p. 88) distinguish it from differently worded enactments in other states defining "the crime commonly called the 'confidence game.' " Compare, for instance, Ill. Pub. Laws 1867, p. 88. We have heretofore outlined the testimony. There was substantial evidence that the bank had no account out of which the check could be paid; that the check was not a payroll check of the St. Louis Shoe Manufacturing Company, and that the named payee, Nora Redman, whether in existence or not, had no beneficial interest in the check. The payee was a fictitious person. American Sash & Door Co. v. Commerce Trs. Co., 332 Mo. 98, 56 S. W. 2d 1034, 1040; First Nat. Bk. v. Produce Ex. Bk., 338 Mo. 91, 89 S. W. 2d 33, 37[1]; 10 C. J. S. 579, § 129; 7 Am. Jur. 839, §§ 95-97; § 401.009. The evidence was sufficient to sustain a conviction.

■ Defendant attacks the State's main instruction. A complaint stressed by defendant is that the instruction required findings of elements of several offenses defined by different statutes. State v. Griggs, 361 Mo. 758, 236 S. W. 2d 588, 592[6], mentioned supra, held an instruction bad because it failed to require a finding "that defendant *knew he had no funds* in the bank," an essential element of the crime charged. We do not understand the Griggs' case to hold prejudicial error occurred on the ground the instruction also hypothesized elements of an independent crime under a different statute. An instruction sufficiently submitting the offense charged and proved may be erroneous in requiring the finding of additional facts for a conviction but such an impropriety places a burden on the State of proving more than the law requires and does not harm a defendant. State v. Spidle, 342 Mo. 571, 116 S. W. 2d 96, 98[3], and authorities cited; State v. Nienaber, Mo., 153 S. W. 2d 360, 361[5]; State v. Carlson, 325 Mo. 698, 29 S. W. 2d 135, 137[4]; State v. Mastin, 277 Mo. 495, 211 S. W. 15, 19[8].

The instruction, which is lengthy, required the jury to find beyond a reasonable doubt that defendant, "with the felonious intent, if you so find, * * to cheat and defraud one Max Zimmer * * by means of false pretenses and representations and a written and printed instrument purporting to be a check of the St. Louis Shoe Manufacturing Company," did feloniously etc. "pretend and represent" to Zimmer "that she, the defendant, ■ was one Nora Redman, whose name appeared as payee of a certain check, purporting to be a payroll check of" said company, further describing the check, for $35.92, "and that said check was a good and genuine payroll check of said" company; and further find that Zimmer, believing and relying on said representations and pretenses, if defendant made them and they were false, was deceived thereby and induced to and did pay over to defendant money and merchandise of the value of $35.92, the property of Zimmer; and further find that by means of said false representations and pretenses and said check, if defendant made them and they were false, defendant feloniously obtained said money and merchandise with intent to cheat and defraud Zimmer; and further find that defendant was not Nora Redman, and that said check was not a payroll check and a genuine check of said company, but was a false and bogus check; and further find that defendant knew she was not Nora Redman and knew that said check was a false and bogus check, defendant was guilty.

The instruction is not fairly subject to defendant's criticism that it assumes the existence of the check. The instruction is to be considered as a whole. It first required a finding that defendant feloniously intended to defraud Max Zimmer "by means of * * a written and printed instrument purporting to be a check of the St. Louis Shoe Manufacturing Company." Then it required a finding that defendant

did feloniously pretend and represent that she "was one Nora Redman, whose name appeared as payee of a certain check * *, and that said check was a good and genuine payroll check of said" company. A finding of the existence of the check was required. It was a written instrument; was correctly described in the instruction and its contents were not questioned. Furthermore, the case was tried by defendant upon the theory and there is not the slightest dispute but that the exhibit was the check upon which Zimmer handed over his money and merchandise and that Nora Redman was the payee named in the check. Numerous cases hold it is not reversible error for an instruction to assume the truth of a fact which is established by undisputed evidence. State v. Smith, Mo., 252 S. W. 662, 666[9]; State v. Ball, 321 Mo. 1171, 14 S. W. 2d 638, 644[7]; State v. Moore, Mo., 80 S. W. 2d 128, 131[6, 7]; State v. Reynolds, 345 Mo. 79, 131 S. W. 2d 552, 556[10].

All that § 561.450 requires for a conviction and relevant here is that defendant "with the intent to cheat and defraud, shall obtain * * from any other person * * any money, property or valuable thing whatever * * by means or by use, of any false or bogus check * *." The offense is complete when an accused obtains the property of his victim with the intent and in the manner stated. State v. Mastin, 277 Mo. 495, 211 S. W. 15, 19; State v. Scott, 301 Mo. 409, 256 S. W. 745, 746[1, 2]; 22 Am. Jur. 476, § 60. We think the instruction submitted all the essential elements of the offense to the jury. It was not necessary, as defendant contends, for instance, to require findings that signatures on the check were forged, or to find defendant's intent other than to feloniously obtain the property. If the check were false and bogus and not genuine it was worthless.

■ Defendant attacks the sufficiency of the verdict, stating that it found her guilty under § 561.370 and that it also contained findings relative to § 561.090 and § 561.450. We have hereinbefore considered the information charged defendant with committing an offense under § 561.450 by means of a false or bogus check. The jury by their verdict found "defendant guilty of obtaining money and goods by means of uttering a bogus check as charged in the information" and assessed the punishment. A meaning of the word "utter" is "2. To put in circulation, as money or currency; to cause to pass in trade; to put to use * * in dealing with others; to put upon the public * *." Webster's New International Dictionary, 2d Ed.; State v. Horner, 48 Mo. 520, 522. "To put or send into circulation; ■ To publish or put forth; To offer." Black's Law Dictionary, 4th Ed.; 2 Wharton's Cr. Law 1215, § 910; Bouvier's Law Dictionary. No reference is found in the verdict to a forged check under § 561.090. Even if the word "utter" is treated as surplusage, the verdict would remain good under § 561.450. State v. Millering, Mo., 111 S. W. 2d 121, 122[4, 5]; State v. Carter, Mo., 64 S. W. 2d 687, 690[10]; State v. Saussele, Mo.,

265 S. W. 2d 290, 293[4-10]; State v. Perry, Mo., 233 S. W. 2d 717, 720[3-5]. The verdict is sufficient.

■ Defendant's counsel in argument stated: "And isn't it an amazing thing that whoever put these checks out, whoever it was, and I say that there is no evidence that it was the same one and on that they have not shouldered the burden of proof, at least they could have shown it was the same handwriting on all three checks—" The State's objection on the ground defendant was not on trial for the making of the checks was sustained. Defendant was on trial for obtaining property with the felonious intent to cheat and defraud by means or by use of a false or bogus check. The burden was not on the State to prove that the three checks offered in evidence were in the same handwriting, and the argument was misleading on the law of the case. The statement did not relate to a matter on which testimony was not as available to defendant as to the State. Furthermore, whether the argument of counsel be proper or improper or require a reprimand or a discharge of the jury or a new trial rests very largely in the discretion of the trial court. State v. Nichols, 327 Mo. 1237, 39 S. W. 2d 777, 780[4]; State v. Lynn, Mo., 23 S. W. 2d 139, 141[1]; Irons v. American Ry. Ex. Co., 318 Mo. 318, 300 S. W. 283, 292[17]; Aly v. Terminal R. Ass'n, 342 Mo. 1116, 119 S. W. 2d 363, 367[10]. The contention is overruled.

The foregoing sufficiently covers the issues presented in defendant's brief. We have examined the transcript filed here (Rules 1.34, 1.04, 28.08) for matters of record proper; and while the transcript fails to present such matters in the usual manner, we find it sufficient. State v. Carroll, 333 Mo. 558, 563(I), 62 S. W. 2d 863, 866(I).

Reversible error not being disclosed, the judgment should be affirmed. It is so ordered.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the Court en Banc. *Leedy*, Acting C.J., *Dalton*, *Hollingsworth*, *Hyde*, *Ellison*, JJ., and *Anderson*, Special Judge, concur.