**STATE of Missouri, Respondent,**

v.

**Roy COOK, Appellant.**

**No. 55831.**

Supreme Court of Missouri,
Division No. 2.

Nov. 8, 1971.

John C. Danforth, Atty. Gen., B. J. Jones, Asst. Atty. Gen., Jefferson City, for respondent.

Charles B. Adams, Kirksville, for appellant.

BARRETT, Commissioner.

Roy Cook, with a prior felony conviction, has been found guilty of intent to cheat and defraud by means of a "false or bogus check" and sentenced to five years' imprisonment. RSMo 1969, § 561.450, V. A.M.S.

Despite the fact that his lawyer has briefed and argued his cause in this court the appellant has lodged (also pro se) certain papers and a "pro se brief." The brief and these documents display a mistaken if not complete lack of knowledge of the law and have no relevance to the record and so are not helpful to a disposition of the appeal. See State v. Leigh, Mo., 466 S.W.2d 685, particularly the concurring opinion. The briefed and meritorious assignment of error is his counsel's claim that at most the evidence showed Cook's "mere presence * * * at the scene" and therefore was insufficient to support the verdict. There is a secondary point that the court erred in permitting Linda Appleburry and a highway patrolman to testify to "crimes not committed by him and for which he was not on trial"— referring to the proof of checks other than the one with which he was specifically charged.

The blank checks had disappeared from the office of the Given Machinery Company. The completed checks all purported to be payroll checks payable to an employee and signed by an authorized company officer. The payees as well as the signer of the checks were all fictitious. The specific bogus check with which appellant was charged was for $85.00, payable to Jerry L. Veach and signed by Charles L. Davis. In brief these were the circumstances as related by Linda Appleburry. On or about January 17, 1970, Linda, Richard King and Larry Johnson rode in a 1957 Chevrolet to Milan. There they met Zenie King, Richard Moore and the appellant Cook all riding in another vehicle. Linda had previously met Cook at Larry's "one Sunday." Linda and her two companions left a cafe in Milan and traveled to Trenton. They drove into a filling station and Larry gave Linda a check for "eighty some dollars," they got gasoline and the balance of the check in cash. She gave the cash to Larry, he gave Richard King "some" and then said, "we had to stop up the road and give Roy back the $40.00." She says that Larry left their automobile with $40.00 in his hand, walked up to the automobile occupied by Cook and then returned empty-handed. She did not see Larry hand the money to Roy. At another filling station in Trenton Linda got four cartons of cigarettes,

cashed another check, got about $70.00 in change and again gave the money to Larry and he again went up to the automobile occupied by Cook. In Cameron they went into a "restaurant and a filling station hooked together" and Linda cashed another check drawn on the Given Machinery Company. There in the restaurant she said, "I seen him (Larry) give Roy Cook $20.00." Tandy Murphy, a filling station attendant in Kirksville, identified the appellant, and said that he came into his station about 9 o'clock, driving a 1957 Chevrolet. Cook, the driver, said "nothing" but Larry Johnson said, "Fill it up." The car only held $3.50 worth of gas. Johnson asked him to cash a payroll check, endorsed it, got two cartons of cigarettes and from the check for $85.50, drawn on the Given Machinery Company, received the balance in cash. A few days later there was a newspaper account of Johnson shooting King and from the photographs Tandy recognized them, particularly Johnson as the person who gave him the bogus check on January 17th.

Thus there was more in the proof than Cook's mere presence, he was the driver of the automobile, $3.50 worth of gasoline was put in the tank, he was in the presence and hearing of Larry when Larry gave Tandy the check. Then too there was the circumstance of Linda's witnessing the fact that in Cameron Larry gave him $20.00. In this posture the case factually bears a close resemblance to State v. Dunlap, Mo., 408 S.W.2d 76, in which the appellant admitted his presence, coincidentally in Trenton, but said that "he knew nothing about the preparation or cashing of the check" which his companion said he divided the proceeds with the appellant and a third "participant in the scheme." Thus all the essential elements of the offense of intent to cheat by means of a bogus check (State v. Euge, Mo., 400 S.W.2d 119) are all permissible inferences and found by the jury support the verdict. As to all the elements in detail, proof of similar transactions by the defendant and others and instructions

see State v. Hartman (en banc), 364 Mo. 1109, 273 S.W.2d 198. As to proof of other and similar transactions, not too remote in time, see State v. McWilliams, Mo., 331 S.W.2d 610; State v. De Clue, Mo., 400 S.W.2d 50, 55; State v. Burnett, Mo., 429 S.W.2d 239. For the indicated reasons the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.